# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 3:13-07 |
| | ) | |
| JAMES K. PARKER, *a/k/a* "STINK" | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**I.     SYNOPSIS**

Pending before the Court is Defendant's motion to suppress evidence and motion to suppress statement (both filed at ECF No. 71). Defendant asserts that the police conducted an unlawful search pursuant to a defective search warrant and unlawfully obtained his statement in violation of the United States Constitution. For the reasons explained below, the Court will **DENY** Defendant's motions.

**II.    BACKGROUND**

This matter arises from alleged drug transactions involving the Defendant and a subsequent search conducted on October 31, 2012. The Government filed a three-count Indictment against Defendant on February 12, 2013. (*See* ECF No. 1). Count 1 charges Defendant with distribution of less than 28 grams of cocaine base on or about October 18, 2012; Count 2 charges Defendant with distribution of less than 28 grams of cocaine base on or about October 30, 2012; and Count 3 charges Defendant with possession with intent to distribute less than 28 grams of cocaine base on or about October 31, 2012.

Counts 1 and 2 arise from two controlled drug purchases involving a confidential informant and Defendant, which occurred on October 18, 2012, and October 30, 2012. Count 3 arises from a search conducted pursuant to a warrant of Apartment # 482, Building # 19, Coopersdale Homes, Johnstown, PA ("Apartment # 482"), which occurred on October 31, 2012. Defendant was arrested on November 1, 2012, in relation to these incidents.

On March 26, 2013, Defendant made his initial appearance, was arraigned, and pled not guilty. (*See* ECF Nos. 34, 36). On January 7, 2014, Defendant filed the pending motions to suppress the evidence seized during the search and the subsequent statement he gave to police. The Government filed a response on February 20, 2014. (ECF No. 85).

Regarding the search of Apartment # 482, Defendant claims that the warrant is defective because it wrongly names Defendant as an "owner, occupant or possessor" of the apartment, even though Defendant's actual address, as listed on his driver's license, is 195 R Barron Avenue, Johnstown, PA. In response, the Government argues (1) that the Defendant was an occupant of Apartment # 482; (2) that whether Defendant was an owner or occupant of the apartment is immaterial because search warrants apply to places and not to people; and (3) that the warrant is constitutionally sound because it is based on probable cause, it describes the place to be searched with sufficient particularity, and it describes the items to be seized with sufficient particularity. Alternatively, the Government argues that the *Leon* good faith exception would apply.

Regarding the statement Defendant gave to police, Defendant claims that the police did not properly administer *Miranda* warnings prior to the interview. The

Government counters that the police properly administered the *Miranda* warnings to Defendant both verbally and in writing prior to the interview and that Defendant waived his rights and voluntarily gave his statement.

On May 29, 2014, the Court held a suppression hearing on Defendant's motions. At the hearing, the Government presented the testimony of four witnesses: Detective Thomas Keirn, Detective Justin Arcurio, Deputy Vince Arcurio, and FBI Special Agent Arnold Bernard. The Government also introduced the following exhibits into evidence: the application for search warrant (Gov't Ex. 1); the statement of rights and waiver form signed by Defendant (Gov't Ex. 2); Defendant's booking sheet (titled "Personal History Report," form DLE-6) (Gov't Ex. 3); an arrest report prepared by Detective Keirn (Gov't Ex. 4); an FBI report from Defendant's interview (Gov't Ex. 5); a consent to search cell phone form signed by Defendant (Gov't Ex. 6); the booking sheet for Ebony Thorne (titled "Personal History Report," form DLE-6) (Gov't Ex. 7); and a search warrant report prepared by Detective Keirn (Gov't Ex. 8). Defendant's counsel cross-examined the Government's witnesses, and offered into evidence a driver license information sheet regarding the Defendant (Def. Ex. A).

### III. FINDINGS OF FACT

The Court makes the following findings of fact based on the evidence and testimony presented at the suppression hearing:

1. The three-count Indictment in this case charges Defendant with distribution of less than 28 grams of cocaine base on or about October 18, 2012; distribution of

less than 28 grams of cocaine base on or about October 30, 2012; and possession with intent to distribute less than 28 grams of cocaine base on or about October 31, 2012.

2. Detective Thomas Keirn began investigating drug activities related to Defendant in August 2012.

3. After successfully conducting multiple drug transactions with Defendant using a confidential informant, Detective Keirn identified Apartment # 482 as a location being used by Defendant to conduct his drug activities.

4. Detective Keirn drafted a search warrant application and affidavit of probable cause, which was approved by Cambria County Assistant District Attorney Forest Fordham, for the purpose of locating instrumentalities and evidence related to illegal drug activities within Apartment # 482. (*See* Gov't Ex. 1).

5. On October 31, 2012, Judge Patrick T. Kiniry of the Cambria County Court of Common Pleas signed and issued a warrant to search Apartment # 482. (*See* Gov't Ex. 1).

6. On October 31, 2012, at approximately 7:15 p.m., officers executed the search warrant issued by Judge Kiniry and conducted a search of Apartment # 482.

7. At the time of the search, Defendant and Ebony Thorne were involved in a romantic relationship, they had one child together, and they held themselves out to be married to one another.

8. During the months prior to the search, Defendant regularly stayed overnight at Apartment # 482, and kept personal belongings at the apartment.

9. On November 1, 2012, Deputy Vince Arcurio and Detective Justin Arcurio arrested Defendant at approximately 11:00 a.m. in the lobby of the Penn Traffic Building in Johnstown, PA, when Defendant arrived to meet with his probation agent.

10. The two officers immediately transported Defendant to the Richland Township Police Department.

11. While transporting the Defendant to the police department, Detective Justin Arcurio verbally administered *Miranda* warnings to Defendant. Defendant verbally acknowledged that he understood his rights.

12. Upon arriving at the police department, the officers processed Defendant and placed him in a holding room.

13. Detective Justin Arcurio then presented Defendant with a waiver of rights form and read the form out loud to Defendant. Defendant answered and initialed each question on the form and signed his name to the bottom of the form, acknowledging that he had been advised of his rights. (*See* Gov't Ex. 2).

14. Shortly thereafter, FBI Special Agent Arnold Bernard interviewed Defendant at the Richland Police Department, beginning a few minutes after noon and continuing for approximately 45 minutes.

15. Prior to beginning the interview, Agent Bernard reminded Defendant of his rights and referred to the waiver of rights form, which was on the table directly in front of Defendant.

16. Defendant waived his rights and agreed to speak with Agent Bernard.

17. During the course of the interview, Defendant signed a consent form to search his cell phone. (*See* Gov't Ex. 6).

IV. **CONCLUSIONS OF LAW**

The Court will separately address (1) the warrant and search of Apartment # 482 and (2) Defendant's statement to the police.

A. **Search Warrant and Seizure of Evidence**

Defendant asserts that the police conducted an illegal search and seized evidence in violation of the United States Constitution. Defendant argues the search warrant was defective in that it wrongly named Defendant as an "owner, occupant, or possessor" of the property subject to the search—Apartment # 482. According to Defendant, Ebony Thorne was the "owner, occupant or possessor" of Apartment # 482, and Defendant was merely an occasional visitor. Thus, Defendant contends, the search and its fruit as it pertains to him should be suppressed.

The Fourth Amendment provides

> [T]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.

U.S. Const. amend. IV. To find probable cause to search, a judge issuing a warrant must determine that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The judge is to make a probable cause

determination under the totality of the circumstances. *Gates*, 462 U.S. at 238. A reviewing court must uphold the issuing judge's finding if the affidavit on which it was based provided a substantial basis for finding probable cause. *United States v. Jones*, 572 F. Supp. 2d 601, 612-13 (W.D. Pa. 2008); *United States v. Conely*, 4 F.3d 1200, 1205 (3d Cir. 1993). In making this determination, the reviewing court must confine itself to the facts, as contained within the affidavit, which were before the issuing judge. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001).

### 1. The Validity of the Warrant

Here, the affidavit of probable cause presented to Judge Kiniry provided a substantial basis for finding probable cause to search Apartment # 482 and supported his conclusion that there was a high probability that evidence of drug activities would be found at that location. Significantly, the affidavit of probable cause details two separate controlled drug purchases from Defendant using a confidential informant that took place inside Apartment # 482. The first drug transaction occurred on October 18, 2012, and the second occurred on October 30, 2012, the day before the search warrant was issued. Reviewing the facts contained within the four corners of the affidavit, these two controlled purchases, along with the other information detailed in the affidavit, unquestionably provide a substantial basis for finding probable cause to search Apartment # 482.

The affidavit of probable cause contained extensive information regarding, among other things: (1) the affiant's extensive experience and training in narcotics investigations;

(2) details regarding the two controlled purchases from inside Apartment # 482 that occurred on October 18, 2012, and October 30, 2012; and (3) information related to the reliability of the confidential informant. (*See* Gov't Ex. 1). Further, the search warrant described with sufficient particularity the premises to be searched—"third floor apartment # 482 in Building # 19 Coopersdale Homes a Public Houseing Complex located at 255 Cooper Avenue, Johnstown Pa. 15906"—and the items to be seized—namely, controlled substances and instrumentalities related to illegal drug activities. (*See* Gov't Ex. 1).

Moreover, the fact that Defendant was identified in the warrant as an "owner, occupant or possessor" of the premises to be searched does not result in a defective warrant. First, it is largely irrelevant who is named in the search warrant as the owner or occupant of the premises. It is well-settled that "search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983); *Kitko v. Young*, No. 3:10-cv-189, 2013 WL 5308016, at * 20 (W.D. Pa. Sept. 20, 2013). Here, the affidavit of probable cause provided a substantial basis for conducting a search of Apartment # 482, regardless of the identity of the actual owner or leaseholder of the premises.

Second, despite Defendant's assertion that he was not an "owner, occupant or possessor," the Government's evidence shows the contrary. The lessee of Apartment # 482 was Ebony Thorne, with whom Defendant was romantically involved at the time of the search. Importantly, both Thorne and Defendant held themselves out to be married.

8

They had a child together, who lived with Thorne in Apartment # 482. Further, Thorne's mother, who lived with Thorne in the apartment, told police that Defendant stayed at the apartment nearly all the time and that Defendant was selling drugs from the apartment. Defendant kept personal effects at the apartment. Defendant conducted his illegal drug activities from the apartment, specifically the two controlled purchases on October 18, 2012, and October 30, 2012. Also, when police contacted the residents at the address listed on Defendant's driver's license, they told police that Defendant had not recently stayed there. Taken together, these facts show that Defendant was a regular occupant of Apartment # 482, as properly identified in the search warrant. Defendant regularly stayed in the apartment with his paramour and conducted illegal drug transactions in the apartment. That Defendant was not a legal owner of the premises or a lessee named on the lease is of no consequence to Defendant's challenge of the search warrant.

Having carefully reviewed the affidavit of probable cause and search warrant, and considering the testimony and the evidence in the record, the Court finds that Judge Kiniry had a substantial basis to conclude that probable cause existed to support the issuance of a warrant to search Apartment # 482. The Court also finds that the warrant is not defective on its face as alleged by Defendant. Accordingly, Defendant's motion to suppress evidence from the search will be denied.

### 2. Good Faith Exception

Even if the Court were to conclude that the search warrant is defective or that the issuing judge lacked a substantial basis for finding probable cause, the evidence obtained

during the search would nevertheless be admissible under the good faith exception to the exclusionary rule.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court identified an exception to the Fourth Amendment's exclusionary rule "when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Loy*, 191 F.3d 360, 367 (quoting *Leon*, 468 U.S. at 922 n. 23 (1984)).

"A judge-issued warrant typically establishes good faith." *United States v. Vaughn*, 498 F. App'x 168, 170 (3d Cir. 2012). Nevertheless, evidence may be suppressed when "the affidavit so lacked indicia of probable cause that belief in its existence was entirely unreasonable or the warrant on its face failed to particularize the place to be searched or the things to be seized." *Id*. (citing *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001). Thus, while the "mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception," the Third Circuit has identified certain situations "in which an officer's reliance on a warrant would not be reasonable and would not trigger the exception." *United States v. Hodge*, 246 F.3d 301, 307-08 (3d Cir. 2001) (citing *Leon*, 468 U.S. at 922-23 and *Williams*, 3 F.3d at 74). Those situations include:

> (1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;

> (2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;
> (3) [when] the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or
> (4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Williams*, 3 F.3d at 74 n.4 (citations omitted).

In the present case, Defendant appears to argue that the third and fourth situations apply. Regarding the third situation, as explained in the probable cause analysis above, Detective Keirn's affidavit contained sufficient indicia of probable cause to support the issuing judge's finding of probable cause to support a search warrant. *Hodge*, 246 F.3d at 309; *Loy*, 191 F.3d at 369. There is simply no support for Defendant's assertion that the affidavit was so lacking in probable cause that it rendered official belief in its existence unreasonable. The affidavit was based on Detective Keirn's extensive investigation of Defendant and the successful completion of multiple drug purchases out of Apartment # 482. Likewise, regarding the fourth situation, as explained in detail above, the warrant is not so facially deficient that it fails to identify with the requisite particularity the place to be searched or the things to be seized.

Based on the evidence before the Court, "the officers properly entrusted their evidence to a magistrate judge to assess probable cause . . . [and] then relied on the magistrate judge's determination and executed the search." *Hodge*, 246 F.3d at 310. As demonstrated by the Government, the officers engaged in objectively reasonable conduct, and Defendant has not offered any evidence to the contrary. Accordingly, even if the search warrant lacked probable cause or was defective in some way, the good faith

exception would apply in this case. Therefore, Defendant's motion to suppress the physical evidence will be denied.

**B.      Defendant's Statement**

Defendant also seeks to suppress the statement he gave to police. Defendant claims that the police did not properly administer *Miranda* warnings prior to taking his statement. Defendant contends that he was not properly Mirandized prior to giving his statement, that he was not sufficiently questioned concerning his understanding of his rights and his waiver of those rights, and that he did not understand that the waiver-of-rights form that he signed constituted his *Miranda* warnings. Defendant also appears to argue that the police should have told him that they were administering the *Miranda* warnings.

It is a bedrock principal in American criminal jurisprudence that certain constitutional warnings must be given to a defendant before he is questioned when he has been "taken into custody or otherwise deprived of his freedom by the authorities in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 478-479 (1966). In *Miranda*, the Supreme Court

> adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination. Prior to questioning, a suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." And, if a suspect makes a statement during custodial interrogation, the burden is on the Government to show, as a "prerequisit[e]" to the statement's admissibility as evidence in the Government's case in chief, that the defendant "voluntarily, knowingly and intelligently" waived his rights.

12

*J.D.B. v. N. Carolina*, 131 S. Ct. 2394, 2401 (2011) (quoting *Miranda*, 384 U.S. at 444, 475-76) (other citations omitted).

Nevertheless, the Supreme Court "has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant." *California v. Prysock*, 453 U.S. 355, 359 (1981); *see also Florida v. Powell,* 559 U.S. 50, 60 (2010) ("The four warnings *Miranda* requires are invariable, but this Court has not dictated the words in which the essential information must be conveyed"). Indeed, the Court has repeatedly affirmed that "no talismanic incantation [is] required to satisfy [*Miranda's*] strictures." *Prysock*, 453 U.S. at 359 (explaining that police are not required to give "a verbatim recital of the words of the *Miranda* opinion"). Thus, to determine whether police officers adequately conveyed the four warnings required by *Miranda*, a reviewing court is not required to examine the words employed "as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Powell*, 559 U.S. at 60 (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)).

Here, the parties do not dispute that the police conducted a custodial interrogation at the police station after arresting Defendant. The issue before the Court is whether the police properly administered the relevant constitutional warnings as required by *Miranda* prior to interviewing Defendant and taking his statement. The Government contends that the police officers administered adequate *Miranda* warnings both verbally and in writing before asking Defendant any questions. Defendant asserts that the warnings were

13

inadequate and that he did not understand that the warnings administered by the officers constituted his *Miranda* warnings.

Defendant's argument is without merit. As noted above, the purpose of the *Miranda* rule is to safeguard the constitutional rights of a criminal defendant by protecting him from compelled self-incrimination. *See, e.g.*, *Moran v. Burbine*, 475 U.S. 412, 425 (1986); *Berkemer v. McCarty*, 468 U.S. 420, 433 (1984). Courts have consistently held that a rote recitation of *Miranda* is not necessary, so long as the four critical warnings delineated in the rule are adequately conveyed by the police to the criminal defendant. Further, it is not necessary that police explain to the Defendant that the warnings being given are the *Miranda* warnings, for it is not the *Miranda* rule that necessitates the warnings, but the Constitution itself. The *Miranda* rule is merely the vehicle by which courts ensure that the constitutional rights of the criminal defendant are not trampled and that a suspect in custody understands his constitutional rights.

Here, the evidence presented by the Government conclusively demonstrates that the police properly administered the warnings required by *Miranda* to the Defendant prior to his interview with police. Defendant was arrested at approximately 11:00 a.m. on November 1, 2012, by Detective Justin Arcurio and Deputy Vince Arcurio at the Federal Courthouse in Johnstown. The officers explained that they were arresting Defendant based on a warrant and immediately placed him in a police cruiser to transport him to the Richland Township Police Department. While traveling to the Police Department, Detective Arcurio verbally advised Defendant of his rights. Defendant verbally

acknowledged that he understood his rights. Neither of the two officers asked Defendant any further questions until arriving at the Police Department.

Upon arriving at the Police Department, the officers processed the Defendant and placed him in a holding room. Detective Arcurio then presented Defendant with a Cambria County Drug Task Force Rights Form. (Gov't Ex. 2). The form contains the following four statements:

1. You can remain silent and not say anything. Anything you say can and will be used against or for you in a court of law.
2. You can talk to a lawyer before answering any questions and have him/her present before and during questioning.
3. If you cannot afford a lawyer, you may have a lawyer appointed free in your behalf and have him/her present in the event you desire to answer any questions.
4. If you decide to asnwer [sic] any questions, you can stop any time you wish.

Additionally, the form includes the following explanation:

In order to secure a waiver of these rights I must ask the following question and record you [sic] affirmative response. Do you undertand [sic] these righst [sic] I have explained to you?

Defendant acknowledged that he could read and write. Detective Arcurio then read the form aloud to the Defendant. Defendant acknowledged in writing and by signing his initials that he understood each of the rights listed on the form. After fully reviewing the form and indicating that he understood it in its entirety, Defendant signed and dated the form. The officers testified that they did not ask Defendant any questions prior to administering the waiver-of-rights form to Defendant.

Soon after Defendant completed the rights form, Agent Bernard began his interview with Defendant. At the beginning of the interview, Agent Bernard referred to

15

the form and asked if Defendant understood his rights. Defendant verbally acknowledged that he understood the rights contained in the form and agreed to waive those rights.

The Court has reviewed the rights form. The form unambiguously presents the constitutional rights as required by the *Miranda* rule. Based on the testimony and evidence presented, it is clear that the officers properly advised Defendant of his constitutional rights in compliance with *Miranda*, both verbally and in writing, before questioning the Defendant.

Having concluded that the police properly administered *Miranda* warnings to Defendant, the Court will now consider whether Defendant knowingly waived his rights and voluntarily gave his statement to police. The law concerning the voluntariness of a statement is well settled. The Third Circuit has explained:

> [A] statement is involuntary when the suspect's "will was overborne in such a way as to render his confession the product of coercion." In determining whether a statement is voluntary, Supreme Court precedent requires consideration of "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." These surrounding circumstances include "not only the crucial element of police coercion," but may also include "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health."

*Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002) (citations omitted); *see also United States v. Weaver*, 3:13-cr-27, 2014 WL 1671399 (W.D. Pa. Apr. 28, 2014). The Court must evaluate the voluntariness of the statement "based on the totality of the circumstances to determine whether 'the confession was the product of an essentially free and unconstrained choice by its maker, that it was the product of a rational intellect and a free will and that the

16

[defendant's] will was not overborne.'" *United States v. Lenegan*, 425 F. App'x 151, 153 (3d Cir. 2011) (quoting *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994)).

The crucial factor in this voluntariness inquiry is that of police coercion—to find that a statement was involuntary, a court must conclude that it was the product of "police overreaching." *See Swint*, 15 F.3d at 289. The Court must ensure that the tactics employed by the police to obtain a confession "were not so manipulative or coercive that they deprived [the suspect] of his ability to make an unconstrained, autonomous decision to confess." *United States v. Griggie*, 105 F. App'x 431, 425 (3d Cir. 2004). The Government bears the burden of proving by a preponderance of the evidence that Defendant's statement was voluntary. *Swint*, 15 F.3d at 289.

Considering the totality of the circumstances of the instant case, the Court concludes that the Government has met its burden and that the objective circumstances of Defendant's interview show that his statement was voluntary. *United States v. Waxman*, 572 F. Supp. 1136, 1153 (E.D. Pa. 1983) *aff'd*, 745 F.2d 49 (3d Cir. 1984). While the Court will address the characteristics of the accused and the details of the interrogation more fully below, "there is simply no evidence in the record to indicate any degree of coercion beyond the most basic police interrogation techniques." *Sweet v. Tennis*, 386 F. App'x 342, 348 (3d Cir. 2010). The police officers advised Defendant of his rights and administered *Miranda* warnings prior to the interview. Likewise, the officers provided Defendant with a written statement of his rights, which he reviewed and signed. (*See* Gov't Ex. 2). Defendant waived those rights and agreed to talk to the police, expressing a desire to cooperate.

The Defendant's characteristics support a finding that his statement was voluntary. The officers testified that Defendant was cooperative and coherent at the time of the interview. Agent Bernard testified that Defendant did not appear to be under the influence of any drugs. Defendant was alert and oriented, and he did not appear to be suffering from any medical, physical, or mental impairment that would cast doubt upon the voluntariness of his statement. Also, Defendant's educational background is strong; he graduated from high school with a 3.0 GPA and was characterized as a "good student." Furthermore, Defendant has an extensive criminal history and is well familiar with the criminal justice system.

The details of the interview also support a finding that Defendant's statement was voluntary. The interview took place in a holding room at the Richland Township Police Department at a table. Agent Bernard described the temperature and surroundings of the room as "comfortable." The Defendant was not handcuffed. The interview lasted about 45 minutes. The officers testified that they never brandished their weapons, shouted at the Defendant, pounded on the table, or engaged in any other aggressive actions. The officers conducted the interview in a normal, conversational tone. Agent Bernard testified that the interview was "cordial" and never became confrontational. Defendant was cooperative and acknowledged that he was willing to waive his rights and give a statement. Defendant never asked for his attorney, never stated that he wished to stop talking, and never asked for a break.

In sum, the totality of the circumstances surrounding the interrogation demonstrates that the officers employed appropriate investigative procedures and did not

engage in overreaching or coercive tactics. The officers adequately advised Defendant of his rights and conducted a relatively brief interview. Defendant knowingly and voluntarily waived his rights. Defendant's will was not overborne nor was his statement coerced. Therefore, because Defendant was properly administered *Miranda* warnings and because Defendant's statements were voluntary and not the product of coercion, Defendant's motion to suppress the statement will be denied.

## V.  CONCLUSION

For the reasons stated above, Defendant's motion to suppress evidence and motion to suppress statement (ECF No. 71) are both **DENIED**. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 3:13-07 |
| | ) | |
| JAMES K. PARKER, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 10th day of June 2014, having considered Defendant's motion to suppress evidence and motion to suppress statement and the Government's response, and having further considered the testimony and exhibits presented at the suppression hearing, and for the reasons set forth in the attached memorandum,

**IT IS HEREBY ORDERED** that Defendant's motion to suppress evidence and motion to suppress statement (both docketed at ECF No. 71) are **DENIED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE